**ROBINSON RUBBER PRODUCTS CO., INC., Dean Aikens; Patricia Schoenecker; and Brad Robinson, individually and on behalf of all other similarly situated, Plaintiffs,**

v.

**HENNEPIN COUNTY, MINNESOTA, Defendant.**

Civil No. 4–95–220 (DSD/JGL).

United States District Court,
D. Minnesota,
Fourth Division.

July 28, 1998.

Steven J. Wells, David Arthur Ranheim, Robert Edward Cattanach, Steven M. Christenson, B. Andrew Brown, Alexandra B. Klass, Michael R. Drysdale, Erik W. Scharf, Dorsey & Whitney, Minneapolis, MN, for Plaintiffs.

Charles Nathan Nauen, Robert J. Schmit, Patricia A. Bloodgood, William Allen Gengler, Susan Elizabeth Ellingstad, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Michael Orville Freeman, Toni A. Beitz, Hennepin County Attorneys, Minneapolis, MN, for Defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon the motion of the plaintiff class for attorneys' fees and the motion of defendant Hennepin County for imposition of sanctions. Based upon a review of the file, record and proceedings herein, the court denies both motions.

## BACKGROUND

The plaintiffs seeks recovery of their attorneys' fees in this litigation which began on April 4, 1995, when plaintiffs filed their complaint against Hennepin County as a companion case to *Oehrleins v. Hennepin County,* Civil No. 4-94-63. Plaintiffs challenged Hennepin County's Ordinance 12, a waste flow-control regulation. Plaintiffs alleged violations of the Commerce Clause, the Sherman Act, the Due Process clause of the U.S. Constitution, and the Due Process clause of the Minnesota Constitution. By order dated March 29, 1996, this court dismissed plaintiffs' claims under the Sherman Act and the Minnesota Constitution. After finding that the plaintiffs in *Oehrleins* and *Robinson Rubber* had standing to raise the Commerce Clause challenge, this court granted partial summary judgment in favor of plaintiffs. The court found a violation of 42 U.S.C. § 1983, holding that Ordinance 12, as written and as enforced, was an invalid attempt to protect local interests from interstate competition in violation of the Commerce Clause. The County was permanently enjoined from enforcing the provisions of Ordinance 12. The court did not dismiss or grant summary judgment on the Due Process claim under the U.S. Constitution. In addition, this court conditionally certified a class of plaintiffs to include "[a]ll residential and commercial generators of mixed municipal solid waste in Hennepin County who directly paid for waste removal at any time during the period June 1, 1989 to the present." Order dated March 29, 1996, at 26.

The County appealed this court's order. On June 9, 1997, the Eighth Circuit Court of Appeals determined that the plaintiff class did not have standing with respect to its Commerce Clause claim. *See Ben Oehrleins*

*and Sons and Daughter, Inc. v. Hennepin County,* 115 F.3d 1372 (8th Cir.1997). The Eighth Circuit determined that, whereas the plaintiff class satisfied the Article III constitutional minima for standing to bring the Commerce Clause claim, the class failed to satisfy the prudential limits on federal jurisdiction. The Eighth Circuit's opinion specifically noted that the plaintiffs' substantive due process and antitrust claims were not at issue in the appeal.

In its consolidated opinion, the Eighth Circuit remanded the *Oehrleins* matter. The Eighth Circuit agreed with this court that "those provisions of Ordinance 12 that prevent the delivery of Hennepin County solid waste to facilities outside of the state discriminate against interstate commerce and so violate the Commerce Clause of the United States Constitution." *Oehrleins,* 115 F.3d at 1388. Whereas the Commerce Clause prevented Hennepin County from restricting the flow of waste out-of-state, the Eighth Circuit determined that an issue remained whether the County may enforce flow control restrictions to waste that stays within Minnesota. The Eighth Circuit held that "intrastate designation as currently enforced pursuant to Ordinance 12 does not discriminate against interstate commerce, and is thus contrary to the Commerce Clause only if it fails" the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970):

> We remand to the district court for consideration of whether the burden on interstate commerce clearly exceeds the local benefits. In conducting this review, the district court should consider all of the interests advanced by the Ordinance in the entire context of the County's master plan and designation plan. These include those anticipated benefits outlined in the designation plan, including landfill abatement, County-wide coordination of waste management, the production of energy, resource recovery, and the goals of the Waste Management Act that the Ordinance was intended to advance.

*Oehrleins,* 115 F.3d at 1387. The plaintiffs requested a rehearing by the Eighth Circuit Court of Appeals, which request was denied on July 10, 1997. Plaintiffs then filed for writ of certiorari with the Supreme Court, which request was denied on December 15, 1997. *See Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County,* —— U.S. ——, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997).

In July 1997, the parties attended a settlement conference before a magistrate judge to discuss settlement in both *Robinson Rubber* and *Oehrleins.* No settlement was reached. In September 1997, the pretrial scheduling order was amended in *Oehrleins* to allow for more discovery on the remanded *Pike* issue. In addition, the plaintiff class amended its complaint to include a state law claim for unjust enrichment and to modify the substantive due process claim.

Because of the Eighth Circuit's disposition, defendant Hennepin County moved to dissolve or modify the permanent injunctions against the enforcement of ordinance 12 in both *Robinson Rubber* and *Oehrleins.* Hennepin County also moved to dismiss the plaintiff class's substantive due process claim. By order dated January 15, 1998, the court dissolved the permanent injunction in *Robinson Rubber* and dismissed the plaintiff class's substantive due process claim. The court did not rule on Hennepin County's motion to dissolve the permanent injunction in *Oehrleins,* however the matter was assigned to the court's trial calendar for June 1, 1998.

In February 1998, the parties attended a settlement conference before Magistrate Judge Raymond L. Erickson. The parties reached a settlement agreement in *Oehrleins,* but not in *Robinson Rubber.* The settlement agreement in *Oehrleins* between the hauler plaintiffs and Hennepin County provided the following terms and conditions:

> 2. The Parties shall stipulate to modify the Court's March 28, 1996 Order, dissolving the permanent injunction in all respects except to the extent that it enjoins Hennepin County from enforcing Ordinance 12's restrictions on the disposal of mixed municipal solid waste outside Minnesota. For a period of five years from the Effective Date of Settlement, Hennepin County shall not enforce Ordinance 12, or other Hennepin County ordinance, to the extent that Ordinance 12 or other ordinance restricts through designation disposal of mixed municipal solid

waste within Minnesota. Hennepin County shall not thereafter enforce Ordinance 12, or other Hennepin County ordinance, to the extent that Ordinance 12 or other ordinance restricts through designation disposal of mixed municipal solid waste within Minnesota, unless and until the Hennepin County Board of Commissioners holds a public hearing, with prior public notice and prior notice by first class mail to plaintiffs' counsel, regarding such enforcement. Further, for a period of five years from the Effective Date of Settlement, Hennepin County shall not participate in any enforcement of restrictions through designation on disposal of mixed municipal solid waste within Minnesota by any consortium, joint powers arrangement or other group of which Hennepin County may be a part.

Affidavit of Michael R. Drysdale in Support of Plaintiffs' Motion for Attorneys' Fees, Ex. 10 at 3–4. On March 30, 1998, the court issued an order based upon the stipulation of the parties for dismissal with prejudice without awarding costs to either party. Judgment was entered in *Oehrleins* on the same day.

Only the state law claim for unjust enrichment remained in the class action. By order dated April 21, 1998, the court granted Hennepin County's motion to dismiss the state law claim. The court dismissed the class action with prejudice, and judgment was entered in the *Robinson Rubber* class action on April 22, 1998.

The plaintiff class filed a notice of intent to claim an award of attorneys' fees pursuant to 42 U.S.C. § 1988 or, in the alternative, "the common fund doctrine." *See* D. Minn. LR 54.3 (permitting notice of intent to claim an award of attorneys' fees to be filed within 15 days after the entry of judgment in the case). Hennepin County opposes the plaintiffs' motion for an award of attorneys' fees and moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

## DISCUSSION

### A. Motion for Attorneys' Fees

■ Section 1988 provides that:

In any action or proceeding to enforce a provision of [§ 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. Plaintiffs may be considered "prevailing parties" under section 1988 if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quotation omitted). A formal judgment on the merits is not required in order for a plaintiff to be considered a "prevailing party." *See Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). The Supreme Court has recognized that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt,* 482 U.S. at 760, 107 S.Ct. 2672; *Warner by Warner v. Independent School Dist. No. 625,* 134 F.3d 1333, 1336 (8th Cir.1998). Under the "catalyst theory," a plaintiff may recover attorneys' fees if the litigation "produces voluntary action by the defendant that affords the plaintiff all or some of the relief that he sought through judgment." *Hewitt,* 482 U.S. at 760, 107 S.Ct. 2672; *A.J. by L.B. v. Kierst,* 56 F.3d 849, 865 (8th Cir.1995) (recognizing that "when remedial action by a defendant moots the lawsuit before trial, a party is entitled to prevailing party status if his lawsuit was a catalyst that brought about or prompted the defendant's remedial action").

Plaintiffs assert that their primary objective in filing this action on behalf of the class of Hennepin County waste generators was to restore the free market for waste services. Plaintiffs allege that the existence of the class and the record it developed were an essential catalyst to the relief obtained, thereby giving plaintiffs the right to recover their fees. Plaintiffs argue that the class and the position which the County was forced to take in the *Robinson Rubber* litigation "ultimately paved the way to a favorable settlement providing precisely the kind of prospective relief sought by the plaintiffs." Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees, at 1. Plaintiffs assert that the County made concessions in the *Robinson Rubber* litigation, specifically that the County had numerous alternatives to

designation and in the absence of designation would have created an identical solid waste management system, which contradicted the County's earlier position in *Oehrleins,* specifically that there was no alternative to designation to achieve its objectives. Plaintiffs assert that "the County's concession of alternatives in order to avoid class damages ultimately created a very substantial likelihood that in-state designation would fail under the *Pike* test." *Id.* at 9–10. Plaintiffs argue that the five-year freedom from in-state designation obtained through the settlement in *Oehrleins* resulted from the record created in *Robinson Rubber* and translates into lower waste disposal costs to the plaintiff class.

■ Defendant argues that this court does not have jurisdiction to award fees under section 1988. Section 1988 "does not by its terms confer subject matter jurisdiction upon federal courts, but rather relies upon the provisions of other federal statutes, such as section 1983 … to confer subject matter jurisdiction." *Keene Corp. v. Cass,* 908 F.2d 293, 298 (8th Cir.1990). "[W]hen no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988." *See National Private Truck Council v. Oklahoma Tax Commission,* 515 U.S. 582, 592, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *State of Missouri v. Cuffley,* 112 F.3d 1332, 1338 (8th Cir.1997) (reasoning that because the court was without jurisdiction to decide the merits of the case, the court was also without jurisdiction to award fees); *Branson v. Nott,* 62 F.3d 287, 293 (9th Cir.) (recognizing that section 1988 does not confer subject matter jurisdiction and, without jurisdiction, the court cannot award fees), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 491 (1995).

Defendant Hennepin County argues that standing is an element of federal subject matter jurisdiction. *See, e.g., Sioux Falls Cable Television v. South Dakota,* 838 F.2d 249, 251 (8th Cir.1988). Because plaintiffs lack standing to assert their claims under section 1983, defendant argues that the court is without subject matter jurisdiction to award fees under section 1988.

The plaintiffs argue that the defendant's position, that this court lacks jurisdiction to award attorneys' fees, ignores a distinction between being denied Article III standing and being denied standing on prudential grounds. Plaintiffs argue that because application of the catalyst theory does not require them to secure by legal judgment the relief they sought, they need not satisfy the prudential limitations on standing because whether or not a plaintiff obtains an actual judicial decree is immaterial under the catalyst theory. Plaintiffs argue that there is a significant difference "between the court having no power to act in the first instance, as where Article III standing is lacking, and choosing not to exercise that power for reasons of judicial self-governance, which is the case with prudential standing." Reply Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees, at 4. Plaintiffs argue that because they have Article III standing, the court has jurisdiction to entertain its motion for attorneys' fees.

■ The requirement of standing in federal court has both constitutional and prudential dimensions. *See Wilcox Electric, Inc. v. Federal Aviation Administration,* 119 F.3d 724, 727 (8th Cir.1997) (citing *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997)). A plaintiff must satisfy an "irreducible constitutional minimum" under Article III which requires a showing of the following:

(1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is 'fairly traceable' to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

*Oehrleins,* 115 F.3d at 1378 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In addition to the Article III requirements, there are also prudential limits on the court's exercise of jurisdiction which require that a party assert its own legal interests rather than the interests of third parties; that a party not assert a "generalized grievance"; and that the party's interests are within the "zone of interests" intended to be protected by the statute, rule or constitutional provision upon which the claim is based. *See*

*Oehrleins*, 115 F.3d at 1378–79; *see also Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court has explained:

> The rules of standing, whether as aspects of the Article III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546 n. 8, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). "Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded." *See Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n. 2 (D.C.Cir. 1994); *see also Warth*, 422 U.S. at 498, 95 S.Ct. 2197 (stating that the question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"); *In re Starr*, —— F.3d ——, —— (8th Cir.1998) (stating that the court "lacks jurisdiction" when a plaintiff cannot satisfy the judicially-imposed prudential standing principles); *Family & Children's Center, Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1057 (7th Cir.) (recognizing that the standing issue involves a two-part inquiry that considers both constitutional and prudential limitations), *cert. denied*, 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Canadian St. Regis Band of Mohawk Indians v. State of New York*, 573 F.Supp. 1530, 1538 (N.D.N.Y.1983) (recognizing that "the concept of standing—even its prudential limitation—is a limitation on federal court jurisdiction").

The court agrees with defendant that standing, including both the constitutional and prudential dimensions, is a prerequisite to jurisdiction. The jurisdictional deficiencies of plaintiffs' claims, notwithstanding that the deficiencies were of the prudential dimension, foreclosed plaintiffs from prevailing on their claims in the *Robinson Rubber* action. The fact that they obtained some measure of relief by virtue of the settlement agreement in the *Oehrleins* case cannot cure the jurisdictional deficiencies of their own claims. Without jurisdiction to entertain an action under section 1983, the court is without jurisdiction to award attorneys' fees under section 1988.

The plaintiffs attempt to separate the failing viability of their own claims from their quest for "prevailing party status":

> Plaintiffs' prevailing party status is not premised on a judgment on the merits in this case (in which case jurisdiction to grant such relief would have been indispensable), but rather on the ultimate results brought about in the companion case by the participation of the Plaintiffs. The *Robinson Rubber* Plaintiffs played a critical role in obtaining much of the relief sought, *despite* ultimately not being allowed to proceed on the merits for reasons of prudential standing.

Reply Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees, at 6–7. Plaintiffs' argument relies on the premise that the principle of standing on the merits as an essential prerequisite for a fee award does not apply when the award is based on something other than a judgment on the merits, or under the catalyst theory. However, the cases on which plaintiffs rely to support their position do not wholly dispense with jurisdictional requirements or recognize an independent basis for subject matter jurisdiction under section 1988. In *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Armstrong v. ASARCO, Inc.*, 138 F.3d 382 (8th Cir.1998), standing was not at issue. Although plaintiffs compare this case with mootness cases in which courts exercised jurisdiction to award attorneys' fees when a change in defendant's conduct mooted the lawsuit, those cases involved intervening mootness. *See Dahlem by Dahlem v. Board of Education of Denver Public Schools*, 901 F.2d 1508, 1512 (10th Cir.1990) (involving intervening mootness); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir.1981) (recognizing that the attorneys' fee issue was ancillary to the underlying action which only became moot after filing), *cert. denied, Midwest Growers Coop. v. United States*, 455 U.S. 942, 102 S.Ct. 1437, 71

L.Ed.2d 654 (1982); *New York State Chapter of the American College of Emergency Physicians, Inc. v. Wing,* 987 F.Supp. 127, 130 (N.D.N.Y.1997) (recognizing that when a case involves intervening mootness, the court may still award attorneys' fees under section 1988); *Randolph Union High School Dist. No. 2 v. Byard,* 897 F.Supp. 174, 176 (D.Vt. 1995) (denying fees where the dispute was moot at the time of filing). Plaintiffs' position is not supported by the cases which they cite because the plaintiffs in this case lacked standing at the commencement of their action.

■ Even though a party may be considered a "prevailing party" in the absence of a judicial decree, the catalyst theory does not dispense with the requirement that the party have a viable claim under section 1983, including jurisdictional prerequisites. *See, e.g., Jones v. Illinois Dept. Of Rehabilitation Services,* 689 F.2d 724, 733 (7th Cir.1982). In this case, plaintiffs do not have a viable claim under section 1983. The "catalyst theory" does not excuse the jurisdictional defects of plaintiffs' claims. The court concludes that it is without jurisdiction to award fees under section 1988.

■ Plaintiffs also argue that they are entitled to an award of fees from the "common fund" being maintained by the County on plaintiffs' behalf under the "Common Fund doctrine." The "Common Fund doctrine" recognizes "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (citing *Internal Imp. Fund Trustees v. Greenough,* 105 U.S. 527, 15 Otto 527, 26 L.Ed. 1157 (1881), and *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)). The Supreme Court has recognized that when the court has jurisdiction over the fund involved in the litigation, such jurisdiction allows a court to prevent inequity by assessing attorneys' fees against the entire fund. *Boeing,* 444 U.S. at 478, 100 S.Ct. 745. In this case, the court lacks jurisdiction over plaintiffs' claims. Similarly, the court lacks jurisdiction over any "common fund" which, plaintiffs argue, exists in this case. Thus, the court denies plaintiffs' request for attorneys' fees under the "common fund doctrine."

**B. Motion for Sanctions**

■ Defendant Hennepin County countered plaintiffs' motion for attorneys' fees with a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, arguing that the plaintiffs' motion for an award of attorneys' fees is groundless, unreasonably multiplied the proceedings, and needlessly increased the cost of this litigation. Rule 11 of the Federal Rules of Civil Procedure provides the following:

(b) Representations to Court. By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, ...

(2) the ... legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

Fed.R.Civ.P. 11(b). If Rule 11 has been violated, "the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed.R.Civ.P. 11(c). The court approaches the imposition of sanctions with caution. *O'Connell v. Champion International Corp.,* 812 F.2d 393, 395 (8th Cir.1987). The imposition of Rule 11 sanctions should not be imposed so as to " 'chill an attorney's enthusiasm or creativity in pursuing factual or legal theories[.]' " *LaSalle National Bank of Chicago v. County of DuPage,* 10 F.3d 1333, (7th Cir.1993) (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363, 1378 (4th Cir. 1991)). A court must use an objective standard of reasonableness to determine whether or not a Rule 11 violation has occurred. *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 548, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). The Court, applying a standard of objective reasonableness, does not find that plaintiffs' arguments were frivolous so as to subject the plaintiffs' attorneys to Rule 11 sanctions.

The court determines that plaintiffs' argument that prudential standing is not essential to seek an award of attorney's fees under the catalyst theory presents an issue for which there is no controlling precedent directly applicable to this situation. The court concludes that plaintiffs' motion falls within the boundaries of Rule 11(b) as a nonfrivolous argument for the extension of existing law or the establishment of new law. Thus, the court finds that no Rule 11 violation exists. The court denies defendant's motion for sanctions.

## CONCLUSION

Based upon a review of the file, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for an award of attorneys' fees is denied (Doc. No. 276); and

2. Defendant's motion for sanctions under Rule 11 is denied (Doc. No. 281).